Ex parte Henry Eiler **LITTLE**, Appellant.

No. 796–93.

Court of Criminal Appeals of Texas, En Banc.

Nov. 2, 1994.

David Daugherty, Galveston, for appellant.

Michael J. Guarino, Dist. Atty. and Warren Goodson, Jr., Asst. Dist. Atty., Galveston,

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Appellant's trial ended when the trial judge *sua sponte* declared a mistrial over appellant's objection. Before he could be retried, appellant filed an application for writ of habeas corpus claiming retrial would violate the prohibition against double jeopardy. U.S. Const., art. V. The habeas judge denied relief and the Court of Appeals affirmed. *Little v. State,* 853 S.W.2d 767 (Tex. App.—Houston [14th Dist.] 1993).[1] We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred in holding appellant consented to the mistrial and whether manifest necessity existed for the mistrial. We will reverse.

### I.

The relevant facts are as follows. Following hearings on pre-trial motions, a jury was impaneled and sworn on June 1, 1992. Due to the lateness of the hour, the jury was excused and instructed to return the following morning. The next morning, all jurors arrived on time except Juror Neely. The trial judge recessed and waited approximately three hours during which time, the State and a Galveston County Sheriff's Officer attempted to contact Neely by telephone. At approximately 1:10 p.m., upon being informed the State was unable to locate Neely, the trial judge raised the possibility of a mistrial.

> The Court: [Neely] appears to be a regular missing person. Nobody seems to know where he is. I think we've probably waited long enough for him. It's now ten minutes past 1:00 o'clock. He was due here at 10:30. Even if he couldn't get to the courthouse, he could certainly get to a telephone. It looks to me like I don't see any alternative but to declare a mistrial as far as this particu-

1. Although the Court of Appeals styled this case as *Little v. State,* the appropriate citation is *Ex parte Little* because this is an appeal from a denial of relief in a pre-trial application for a writ of habeas corpus.

lar trial is concerned. Does anyone have any ideas about that?

The State: The State is not opposed to a mistrial provided we can start up with a fresh panel tomorrow morning.

Appellant: We'd be happy to sit here and wait and see if he shows up.

The Court: That's what we've been doing. I would think that three hours is sufficient time for a fellow to show up. It looks to me like he's not going to be here.

Appellant: In the interest of justice I think we should make a record that the weather has been horrible all day today, that there's been a tremendous amount of flooding. It may well be that he is simply flooded and on his way. Since he's hitchhiking or some other mode of transportation, it may take more than one vehicle to get here. [The Prosecutor] has already taken the time to call his friends and so on.

The Court: We have eleven other jurors that have come from all parts of the county. I know that ... [Appellant's counsel] ... has come all the way from Houston today. And everyone else was able to make it other than this one person coming from Friendswood. Even if he couldn't make it to the courthouse, he could certainly make it to a telephone and give us a call and let us know why he's not here.

Appellant: That's assuming he has a quarter, Your Honor.

The Court: Or a friend.

Appellant: I doubt the courthouse takes collect calls; so, he may not have been able to call then.

The State: I think we can dispose of that argument because his two roommates have telephones. There are two phones right there in the residence. He could have made a call from home.

The Court: Sure.

Appellant: If he is stuck at home. My understanding is he left the place headed for here. Therefore, saying he can call from home at this point in time is ludicrous. If he was at home, he could have called. No question about it.

The Court: I see no choice but to declare a mistrial. This case at this time is in mistrial. We'll call the jurors out and excuse them. There's no way we can proceed. Furthermore, I have some doubts about the propriety of proceeding to pick another jury out of the leftover members of the panel.

[Hearing on Mistrial, pp. 5–7.] The trial judge then reconvened and dismissed the jury. The record further indicates that following dismissal of the jury, the trial judge entertained a defense motion of double jeopardy on the grounds that appellant did not consent to the mistrial and that the trial could have proceeded with only 11 jurors. [Hearing on Mistrial, pp. 8–10.] The trial judge declined to rule on the motion and granted appellant time to file a pre-trial writ of habeas corpus. [Hearing on Mistrial, pg. 14.]

Appellant filed an application for pre-trial writ of habeas corpus and a hearing was held. The habeas judge denied appellant's application and appellant appealed to the Court of Appeals. *Little v. State*, 853 S.W.2d 767 (Tex.App.—Houston [14th Dist.] 1993). The court affirmed on two grounds. First, the court held appellant impliedly consented to the mistrial by failing to object to the trial judge's announcement granting the mistrial. *Id.*, at 767–768. Second, the court held that even if appellant did not consent, manifest necessity resulting from the missing juror justified the mistrial. *Id.*, at 769.

## II.

### A.

■ The Fifth Amendment to the United States Constitution prohibits a State from twice putting a defendant in jeopardy for the same offense. *Alvarez v. State*, 864 S.W.2d 64, 65 (Tex.Cr.App.1993) (citing *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978)), *and*, *Harrison v. State*, 788 S.W.2d 18, 21 (Tex.Cr.App.1990). Jeopardy attaches when a jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978),

*and, State v. Torres*, 805 S.W.2d 418, 420 (Tex.Cr.App.1991). Consequently, as a general rule, if, after the defendant is placed in jeopardy, the jury is discharged without reaching a verdict, double jeopardy will bar retrial. *Wade v. Hunter*, 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957), *and, Alvarez*, 864 S.W.2d at 65. "An exception to this rule is made if the defendant consents to a retrial, or if a retrial before a new jury is mandated by some form of manifest necessity." *Torres v. State*, 614 S.W.2d 436, 441 (Tex.Cr.App. 1981) (citing *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978), *and, Illinois v. Somerville*, 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973)). Accordingly, where manifest necessity exists to declare a mistrial, the constitutional prohibition against double jeopardy is not implicated. *Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), *and, Harrison*, 788 S.W.2d at 21–22. While the Supreme Court has declined to formulate rules based on categories of circumstances in which manifest necessity exists, *see, United States v. Jorn*, 400 U.S. 470, 480, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971), a trial judge's discretion to declare a mistrial based on manifest necessity is limited to "very extraordinary and striking circumstances...." *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963).[2]

**B.**

The Court of Appeals held appellant consented to the mistrial because he did not object when the trial judge announced he would declare a mistrial. *Little*, 853 S.W.2d at 767–768. In so holding, the court noted that consent to a mistrial may be inferred from the totality of the circumstances surrounding the declaration of a mistrial. *Id.* (citing *Torres*, 614 S.W.2d at 441). In reviewing the record, the Court of Appeals focused only on appellant's statement that he would "be happy to sit here and wait and see if [Neely] shows up." *Little*, 853 S.W.2d at 768. The Court's analysis is flawed, however, because by isolating this one sentence, the court ignored the exchange between appellant, the State and the trial judge preceding and following the mistrial.

The purpose of an objection is twofold: (1) to notify the trial judge and the State of the complaint, *see, Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App.1977); and (2) to preserve a complaint for appellate review, *see,* Tex.R.App.P. Rule 52(a). The statutes do not prescribe a particular form for stating an objection. *See,* 26 Tex.Jur.3d, Criminal Law § 3954, at 182 (1983). We have acknowledged that with regards to objections "there are no technical considerations or form of words to be used. Straightforward communication in plain English will always suffice." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Cr.App.1992). Therefore, an objection may be phrased in any manner which sufficiently appraises the trial judge and opposing counsel of the nature of the complaint.[3] *Young v. State*, 826 S.W.2d 141, 150 (Tex.Cr.App.1991); *Nichols v. State*, 754 S.W.2d 185, 192–193 (Tex.Cr.

---

2. Instances where the Court has found manifest necessity existed for a mistrial include: *Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165; *Logan v. United States*, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892) (juror deadlock); *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); *Thompson v. United States*, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894) (juror prejudice discovered after jeopardy attached), *and, Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949) (mistrial declared due to tactical necessity on battlefield).

3. In *Lankston,* we stated:

The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. Of course, when it seems from context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost. But otherwise, they should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known.
*Id.*, 827 S.W.2d at 909.

App.1988); *Zillender,* 557 S.W.2d at 517. *See also, Carter v. State,* 717 S.W.2d 60, 76 (Tex.Cr.App.1986) (Defendant's statement "please note our exception" was sufficient because "the ground of the objection was obvious to the trial court and to the State. No one was misled.") It is only when the nature of a defendant's complaint is unclear that we should consider his objection waived. *Lankston,* 827 S.W.2d at 909.

In the instant case, we cannot infer from the circumstances that appellant consented to the mistrial because the record plainly shows appellant opposed declaring a mistrial due to the tardy juror.[4] When the trial judge raised the possibility of mistrial, appellant suggested waiting longer for Neely to arrive. [Hearing on Mistrial, pg. 5.] Appellant further explained:

*In the interest of justice I think we should make a record* that the weather has been horrible all day today, that there's been a tremendous amount of flooding. It may well be that he is simply flooded and on his way. Since he's hitchhiking or some other mode of transportation, it may take more than one vehicle to get here. [The Prosecutor] has already taken the time to call his friends and so on.

[Hearing on Mistrial, pg. 6.] (Emphasis added.) It is readily apparent that appellant sought to note for the appellate record that the grounds for manifest necessity did not exist when the trial judge declared the mistrial, [Hearing on Mistrial pp. 6–7.], and appellant re-raised the issue of lack of manifest necessity immediately after the jury was dismissed. [Hearing on Mistrial, pp. 8–14.] By permitting appellant and the State to present case law on manifest necessity following the mistrial and then granting them time to prepare for a later habeas corpus hearing, the trial judge understood appellant to have opposed the mistrial. *See, Zillender,* 557 S.W.2d at 517. Consequently, we may infer from the totality of the circumstances that appellant did not consent to the mistrial. *Cf.,*

*Harrison v. State,* 767 S.W.2d 803, 806 (Tex. Cr.App.1989). Moreover, to hold that appellant waived his objection merely by failing to explicitly state "I object," we would adopt the hypertechnicalities which we rejected in *Lankston. See, id.,* 827 S.W.2d at 908–909. Therefore, we hold appellant did not consent to the mistrial.

### C.

Because the mistrial was granted without appellant's consent, double jeopardy bars retrial unless there was manifest necessity for the mistrial. *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830; *Alvarez,* 864 S.W.2d at 65, *and, Harrison,* 788 S.W.2d at 21. Prior to granting a mistrial the trial judge must consider the less drastic alternatives. *Torres,* 614 S.W.2d at 442. Where a trial judge grants a mistrial despite the available option of less drastic alternatives, there is no "manifest necessity" prompting the decision and we will find an abuse of discretion. *Harrison,* 788 S.W.2d at 23–24.

In holding manifest necessity existed, the Court of Appeals explained the trial judge considered the less drastic alternatives:

The appellant argues that the trial court failed to consider the alternatives of issuing a writ of attachment for the missing juror, or proceeding to trial with eleven jurors. Under these facts, it was reasonable for the trial court to believe that a writ of attachment would be futile. Furthermore, the trial court reasonably believed that the appellant was not willing to proceed to trial with eleven jurors. When asked for alternatives to a mistrial, the appellant stated only that he was willing to wait for the missing juror. The trial court and eleven jurors had already waited three hours.

*Little,* 853 S.W.2d at 769.

A review of the record reveals, however, that the trial judge failed to consider less drastic alternatives. Following appel-

---

4. In *Marin v. State,* 851 S.W.2d 275, 278 (Tex.Cr. App.1993), we acknowledged that certain rights are "widely considered so fundamental to the proper functioning of our adjudicatory process ... that they cannot be forfeited. This is to say, they are not extinguished by inaction alone."

However, because the record is clear that appellant opposed the trial judge's declaration of a mistrial, the issue of whether a defendant's silence in the face of a mistrial amounts to consent need not be decided by us this day.

lant's suggestion that they wait for Neely to arrive, the trial judge summarily stated: "I see *no choice* but to declare a mistrial. This case at this time is in mistrial. There's *no way* we can proceed." [Hearing on Mistrial, pg. 7.] While it is apparent that the trial judge rejected waiting longer for the missing juror to arrive, there is no evidence that the trial judge considered the most available less drastic alternative, a continuance until the missing juror could be located. A defendant having a right to a jury has a concurrent right to a continuance until the full jury is in attendance. *See,* 17 C.J.S. *Continuances* § 75 (1963). *Compare,* 17 Am.Jur.2d *Continuance* § 117 (1990) (continuances may be granted due to the occurrence of unusual events prior to or during trial which might prejudice the rights of the defendant).

Furthermore, it is clear the trial judge did not consider the alternative of issuing a writ of attachment for Neely prior to declaring the mistrial. *See, e.g.,* Tex.Code Crim.Proc. Ann. art. 35.01. Such an alternative was feasible in light of the circumstances: the record reflects that the day following the mistrial, a writ of attachment was issued for Neely and that Neely was subsequently before the trial judge. [TR. pg. 5; Habeas hearing, pp. 52–53.] Consequently, the trial judge did not consider any less drastic alternatives to declaring a mistrial.[5]

While the prolonged absence of a juror might give rise to manifest necessity under certain circumstances, the facts of this case did not provide the "very extraordinary and striking circumstances," *Downum,* 372 U.S.

at 736, 83 S.Ct. at 1034, to support the trial judge's decision. Information provided to the trial judge by the State indicated the missing juror had departed for jury duty. [Hearing on Mistrial, pp. 4–5.] Further, the trial judge had notice of the inclement weather on the day of trial and that the missing juror lacked transportation. [Hearing on Mistrial, pp. 4, 6.] Appellant raised the possibility that the missing juror was without the money to contact the courthouse if he encountered difficulties in arriving for jury duty.[6] [Hearing on Mistrial, pp. 6–7.] However, the trial judge did not address these considerations. Therefore, because the trial judge failed to explicitly or implicitly rule out a less drastic alternative in favor of granting a mistrial, the record does not support the trial judge's decision. *Harrison,* 788 S.W.2d at 22, *and, Torres,* 614 S.W.2d at 442. Consequently, the trial judge abused his discretion in declaring a mistrial on the basis of manifest necessity.

### III.

The record is clear that appellant did not consent to the trial judge's declaration of a mistrial. Furthermore, because the trial judge failed to address and rule out less drastic alternatives prior to declaring a mistrial the record does not support his decision to grant a mistrial based on manifest necessity. Accordingly, appellant's retrial is jeopardy barred. The judgment of the Court of Appeals is reversed, and the case is remanded to the trial court to enter an order dis-

---

5. Although the record indicates that the trial judge considered proceeding with eleven jurors pursuant to Tex.Code Crim.Proc.Ann. art. 36.29 [Hearing on Mistrial, pp. 9–12], proceeding to trial without the absent juror was not a valid alternative. The Legislature has provided that "Not less than twelve jurors can render and return a verdict in a felony case." Art. 36.29(a). *See also, Marquez v. State,* 620 S.W.2d 131, 133 (Tex.Cr.App.1981); *Dailey v. State,* 162 Tex.Crim. 387, 285 S.W.2d 733 (1956) ("A verdict of less than 12 jurors will not support a valid judgment."), *and, Clark v. State,* 161 Tex.Crim. 278, 276 S.W.2d 819, 820 (1955) ("[T]he judgment in this case is void, because the trial was by a juror composed of only eleven jurors who returned the verdict therein."). *But cf., Carrillo v. State,* 597 S.W.2d 769, 771 (Tex.Cr.App.1980) (trial may proceed with less than 12 jurors if all parties

consent). The Legislature has further provided in art. 36.29(a) that a trial may proceed with eleven jurors *only* where a juror has died or is disabled by a physical, mental or emotional impairment. *Landrum v. State,* 788 S.W.2d 577, 579 (Tex.Cr.App.1990), *and, Carrillo,* 597 S.W.2d at 770–71. Therefore, because there is no evidence that the absent juror was "disabled" within the purview of art. 36.29(a), *Landrum,* 788 S.W.2d at 579, the trial court was not authorized by statute to proceed with less than 12 jurors.

6. A subsequent hearing on appellant's application for writ of habeas corpus established that the missing juror had not been issued an information card with instructions on how to contact the Galveston County Courthouse. [Habeas hearing, pg. 60].

charging appellant and barring any reprosecution for the same offense.

CAMPBELL, J., not participating.

McCORMICK, Presiding Judge, dissenting.

I dissent. I do not believe the record before us demonstrates an objection sufficiently clear to apprise the trial court of appellant's objection to the granting of a mistrial. Therefore, I would affirm the Court of Appeals' holding that appellant impliedly consented to the granting of a mistrial. See *Little v. State*, 853 S.W.2d 767, 767–69 (Tex.App.—Houston [14th Dist.] 1993).

MEYERS, J., joins this dissent.

MEYERS, Judge, dissenting.

If there was ever a case which should be controlled by *Arcila v. State*, 834 S.W.2d 357 (Tex.Cr.App.1992), this is it. Therefore I dissent to the majority's disposition of appellant's second ground for review.

WHITE, J., joins.